*Formatted for Electronic Distribution*                                                    *Not For Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

_____

**In re:**
      **LYNDA M. MARKISON,**                    Chapter 7 Case
                    **Debtor.**                    # 05-12616

_____

Filed & Entered
On Docket

**Lynda M. Markison,**
                **Plaintiff,**

06/05/07

      v.

**Educational Credit Management**                    Adversary Proceeding
**Corporation,**                                     # 06-1007
                **Defendant.**

_____

*Appearances:*     John P. Riley, Esq.           Gary L. Franklin, Esq.
                   McKee, Guiliani & Cleveland   Primmer Piper Eggleston & Cramer PC
                   Montpelier, Vt.               Burlington, Vt.
                   *For the Plaintiff*           *For the Defendant*

## MEMORANDUM OF DECISION
### GRANTING JUDGMENT IN FAVOR OF THE DEFENDANT

        Plaintiff Lynda M. Markison ("Markison" or the "Plaintiff") initiated the instant adversary proceeding against the holder of her student loans for a determination of whether those loans could be discharged in bankruptcy. For the reasons set forth below, the Court determines that the Plaintiff has not met her burden under the test enunciated by the Second Circuit in <u>Brunner v. New York State Higher Educ. Servs. Corp.</u>, 831 F.2d 395 (2d Cir. 1987) governing dischargeability of student loans, and therefore the Plaintiff's student loan obligations are not discharged.

### JURISDICTION

        The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 157(b)(2)(I). It is undisputed that this adversary proceeding is a core proceeding.

### THE FACTS

        On December 29, 2005, Markison filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Approximately a month later, on January 24, 2006, she filed a complaint to determine the dischargeability of her student loan debts.[1] On February 27, 2007, the Court conducted a one-day non-

---

[1] Originally, Markison named the U.S. Department of Education and the Vermont Student Assistance Corporation as defendants in the adversary proceeding. The Court granted both the motion to dismiss the U.S. Office of Education on March 14, 2006 (doc. # 10) and the motion to substitute the Educational Credit Management Corporation ("ECMC") as a party defendant on March 27, 2006 (doc. # 12).

jury trial and took the matter under advisement. On October 3, 2006, the Court entered an Order Discharging Debtor (doc. # 27 in # 05-12616).

The parties have stipulated to the following facts in their joint pre-trial statement:

1. Ms. Markison is an unmarried individual and resides in Vermont.

2. Ms. Markison received a bankruptcy discharge in October 2006.

[3.] Ms. Markison has four grown children and one son who is a senior in high school.

[4.] Ms. Markison received a Bachelor's in Science from Lyndon State College, Lyndonville, Vermont in 1994.

[5.] Ms. Markison is employed full-time by Westat as a lister.

[6.] Ms. Markison currently earns approximately $21,060 per year plus room, board and travel expenses incurred during the course of her employment.

[7.] On or about December 15, 2003, the Plaintiff executed a consolidated note with VSAC (the "Note").

[8.] ECMC is the current holder of the Note.

[9.] Interest continues to accrue under the Note at the rate of 4.13%.

[10.] Pursuant to applicable Federal Regulations and the terms of the Note, a guaranty agency is entitled to add collection costs to the principal and interest balance due thereon.

[11.] As of February 22, 2006, the outstanding balance on the Note was $42,491.53.

[12.] Ms. Markison does not suffer from a disability.

(doc. # 45 in # 06-1007). At the trial, only the Plaintiff testified. The parties offered a number of documents into evidence.

## DISCUSSION

Section 523(a)(8) of the Bankruptcy Code provides that:

(a) A discharge under [certain sections of the Code] does not discharge an individual debtor from any debt –

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for –

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a government unit . . .

A student loan will not be discharged unless the debtor "affirmatively secures a hardship determination." Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004).

In the Brunner case, the Second Circuit announced the standard for "undue hardship" that this Court must apply in order for a debtor to have his or her student loans discharged as an undue hardship. The standard requires the debtor to establish that:

> (1)   the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2)   additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3)   the debtor has made good faith efforts to repay the loans.

Brunner, 831 F.2d at 396. It is the debtor's burden to prove each of the three prongs of the Brunner test. In re Lehman, 226 B.R.805, 808 (Bankr. D.Vt. 1998). If a debtor cannot satisfy each and every prong of the Brunner test, she is not entitled to discharge the student loan. Williams v. New York State Higher Educ. Servs. Corp. (In re Williams), 296 B.R. 298, 302 (S.D.N.Y.2003) (quoting Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish ), 72 F.3d 298, 306 (3d Cir. 1995)); see also In re Thoms, 257 B.R.144, 148 (Bankr. S.D. N.Y. 2001); Lehman, 226 B.R. at 808. The debtor must prove her case by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 287 (1991); In re Maulin, 190 B.R. 153 (Bankr. W.D.N.Y. 1995). The determination of undue hardship is case- and fact-specific. Id. at 156.

### A.   The "Minimum Standard" Prong

To prove the "minimum standard" prong of the Brunner test, the Plaintiff must show that she cannot, based upon her current income and expenses, both maintain a "minimal" standard of living and repay her student loans.

At trial, Markison testified that she had worked throughout her adult life, and many of her jobs had provided no benefits. In September 2005, she began working full-time as a school custodian in Barnet, Vermont earning $10.00 to $10.50 per hour. However, the chemicals that she used triggered migraine headaches and she left that job after a "short time." Around that time, her student loans were sent to a collection agency. Starting in November 2005, she was employed by a St. Johnsbury school, but that job "did not work out," because the position that did not pay enough money. In December 2005, she filed for bankruptcy relief.

In March 2006, Markison was hired as a lister by Westat, a research company based in Rockville, Maryland that contracts with the government to do government studies. She was continuously employed by Westat through the date of the trial. Markison testified that, in this position, she travels to different areas throughout the country and "maps" those areas. Researchers use the maps Markison creates to conduct interviews of residents four months later. Westat pays Markison $14.00 per hour plus a per diem for living expenses; the company also pays for her hotel and job-related transportation and miscellaneous

3

expenses. In addition, she receives health and dental insurance benefits: her employer pays $200 per month and she pays $691 per month for this insurance. Admitted as Exhibit 8 was her latest pay stub from Westat (for the period 1/29/07 to 2/04/07), which showed $338.74 per week net pay and $2,323.50 total net pay year to date.[2] Markison clarified that her employment was for full-time work for 80% of the year, and therefore agreed that if she multiplied her weekly salary by 52 weeks and then took 80% of that figure, the resulting product would reflect her annual pay – amortizing to $1,171 per month.

Markison testified at some length about her current income and expenses. She offered revised Schedules I and J that had not been filed with the Court but which had been prepared with her attorney's assistance on the day prior to the hearing. Markison testified – and this exhibit indicated – that her current monthly net pay was $1,168 (within $3 of the figure calculated when applying the 80% of full time employment calculation, above) and her current monthly expenses were $1,344. The Court admitted this exhibit (Exhibit 7) as a summary of Markison's testimony.

The prominent item in these schedules, for purposes of this adversary proceeding, is Markison's $984 per month expense for "transportation." She explained that this amount represents what she spend on airfare or bus fare from wherever in the country she may be working back to Vermont – which she described as her home state although she has no primary residence there – once or twice per month. She asserted that she made these trips to see her children (three of her five children live in Vermont), to vote, to keep scheduled appointments, and to attend "significant family events" like graduations, or her youngest son's art exhibit. Markison's only other major expense listed on Schedule J – $200 – was for food, which she spent when she returned to Vermont (since her weekly and weekend food expenses were covered by her employer's per diem if she remained in the locality where she was working). Other than these two expenses, Markison's monthly expenses are modest: $40 for telephone service; $40 for clothing (purchased at thrift stores); $50 for laundry and dry cleaning; and $30 for medical and dental expenses. Markison also testified that she currently paid health and car insurance for her youngest son pursuant to a Caledonia Family Court Order. (Exhibit 4). This son, a high school senior, was to turn 18 in April 2007. He lived "mostly" with another one of her sons, a 23-year old who was finishing his college education at Lyndon State College. Markison recently paid $300 from her 2006 tax refund of $3,900 as a deposit to a New Hampshire college that her youngest son plans to attend.

On cross-examination, Markison stated that while she was on the road for her job, she had the option of staying in the place she was stationed through the weekend and, if she did so, her employer would pay for her room and board expenses over the weekend as well as allowing her use of a company car. She acknowledged that it was entirely her choice to go to Vermont and incur the expenses associated with this travel.

---

[2] Markison testified, however, that she believed the year-to-date figure seemed inaccurate.

Based on this testimony, the Court finds that the Plaintiff has not sustained her burden of proof on the first prong of the Brunner test. As indicated earlier, the Court must assess whether the Plaintiff has proven that she cannot maintain, based on her current income and expenses, a minimal standard of living for herself and her dependent if forced to repay her student loans. See Brunner, 831 F.2d at 396. "In making this assessment, a court should examine the debtor's standard of living, with a view toward ascertaining whether the debtor has attempted to minimize the expenses of h[er]self and [her] dependents." Burton v. ECMC (In re Burton), 339 B.R. 856, 870 (Bankr. E.D.Va. 2006) (quoting U.S. Dep't of Health & Human Servs. v. Smitley (in re Smitley), 347 F.3d 109, 117 (4th Cir. 2003)). "Financial adversity alone is insufficient to warrant a student loan discharge on the basis of undue hardship." Paul v. Suffolk Univ. (In re Paul), 337 B.R. 730, 737 (Bankr. D.Mass. 2006).

Markison finds herself in the unusual and beneficial position of having the great majority of her weekly expenses (room, board, and travel) covered by her employer. The reimbursement of expenses would extend to weekends as well if she remained in the locale where she was stationed. She has no monthly rent or mortgage payment and her other living expenses (telephone, laundry, clothing, medical/dental) are low. While she has one dependent, she testified that although she and the father of the child share 50% custody, her minor son lives with his brother. Pursuant to a Family Court Order, she must maintain health and automobile insurance for her minor son.[3] Markison's new Schedule J indicates that she spends a total of $752 per month on insurance for herself and her son and does not list any automobile insurance (which she estimated cost about $100 to $120 per month).

What is not minimal, and what this Court finds dispositive in the analysis of the first Brunner prong, is the $984 per month that Markison spends to travel to Vermont while she is working in various parts of the country. She admitted that this travel is entirely discretionary, and that she makes these trips to maintain ties with her family and her state of residence. While the Court is loathe to micromanage the expenses of debtors, or to impose itself in decisions affecting family commitments, it is nevertheless called upon to determine whether the Plaintiff has made the required effort to minimize her expenses. If she does not prove she has minimized her expenses, she does not satisfy the Brunner standard and the Court is without authority to grant a discharge of her student loans.

In fact, Markison spends 84% of her net monthly take-home pay (of $1,168) on travel expenses. This figure is "excessive in light of the sacrifice expected of an individual to repay [her] student loan obligations," In re Pincus, 280 B.R. 303, 317 (Bankr. S.D.N.Y. 2002), and could be significantly reduced if Markison took fewer trips in an effort to minimize this discretionary expense – perhaps leaving a

---

[3] A number of other expenses testified to by Markison were not included on her new Schedule J, i.e., payment of car insurance for her daughter who lives in Vermont and providing $200 to $300 a month assistance to her son who is finishing Lyndon State College.

5

sufficient differential to make payments on her student loan debt.[4] While a mother's desire to keep in regular contact with her children is legitimate and laudable, the question of the reasonableness of expenses is critical to the Brunner test, and Markison has not persuaded the Court that her travel budget is reasonable, despite her otherwise minimal monthly expenses. "The absence of a reasonable budget precludes the Court from finding that the Debtor lacks excess funds such that [s]he could not maintain a minimal standard of living if required to repay h[er] loans." Id. at 318. She "has ample room to rebudget h[er] finances," id. at 317, and out of that travel expense she could make a student loan payment. In other words, being unable to travel at one's discretion is not an undue hardship. Accordingly, the Court finds that the Plaintiff has failed to show that she cannot maintain a minimal standard of living absent a discharge of her educational loans, and hence has not met her burden of establishing the first prong of the Brunner standard.

### B. The "Future Prospects" Prong

The determination that the Plaintiff failed to establish the first prong of the Brunner test obviates the need to examine the two other prongs because "[i]f one of the requirements of the Brunner test is not met, the bankruptcy court's inquiry must end there, with a finding of no dischargeability." Faish, 72 F.3d at 306. Nevertheless, the Court will also address the future prospects prong of the test, and finds that the Plaintiff's failure to provide any evidence on this prong provides an alternate basis upon which to deny the discharge of the student loan debts.

The second Brunner prong requires a showing that "additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans" or, stated another way, "Requiring evidence not only of current inability to pay but of additional, exceptional circumstances, strongly suggestive of continuing inability to pay over an extended period of time, more reliably guarantees that the hardship presented is 'undue.'" Brunner, 831 F.2d 396. Additional and exceptional circumstances have been described as circumstances where "the debtor experienced an illness, developed a disability, or became responsible for a large number of dependents after receiving the [student] loan." In re Thoms, 257 B.R. 144, 149 (S.D.N.Y. 2001). See Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 142, 144 (Bankr. D.Vt. 2001). This Court has found the second prong has been met where the debtor exhibited a combination of low income and exceptional circumstances so severe that the debtor would not have been able to repay the loans. See King v. Vt. Student Assis. Corp. (In re King), __ B.R. __, 2007 WL 1404380 (Bankr. D.Vt. May 11, 2007); Kelsey, 287 B.R. 132.

---

[4] No evidence was received concerning what Markison's current student loan payment might be if she were required to repay her student loan. At one time, her payments were $198.00 per month.

In the parties' Joint Pretrial Statement, Markison admitted that she does not suffer from a disability. At present, she has only one dependent. She has provided no evidence of any exceptional circumstances that would suggest that she would be unable to pay her loan over an extended period of time. In fact, she is employed full-time (for 80% of the year), appears to be in good health, has a strong work ethic, has maintained a variety of jobs over the course of her life, and has a wide range of job skills. However, the record reflect that since she graduated 13 years ago, the Plaintiff has ultimately been unsuccessful in her efforts to obtain employment as a teacher or to obtain a position in her field of training that would provide health insurance benefits for her children. The Plaintiff argues that, at age 54, her prospects for obtaining sufficient employment to repay her ever-compounding loans are not good.

Markison's age and inability to find higher-paying employment are not the kinds of additional or exceptional circumstances contemplated by the Brunner standard. Moreover, to the extent her need to provide for her children financially is an aspect of her situation that she might characterize as exceptional (given her work demands), her children are now all over 18 and hence those putative exceptional circumstances will not continue into the future. Rather than being exceptional, the desire for – and inability to find – higher paying employment is, unfortunately, commonplace among debtors. See Paul, 337 B.R. at 737 ("Unemployment or underemployment are insufficient *per se* to establish undue hardship"); Brunner, 46 B.R. 752 (S.D.N.Y. 1985) (opining that the debtor, "a woman who is unlikely to find a job in her chosen field of work in the near future," but who otherwise is an "apparently healthy, presumably intelligent, and well-educated woman," militated against discharge of her student loans).

Accordingly, the Court finds that the Plaintiff has not met her burden of proof on the future prospects component of the Brunner test.

### CONCLUSION

While the Court recognizes the significant sacrifice the Plaintiff has made in accepting employment that requires her to be far from her children for long periods of time, and acknowledges the strong work ethic that has led her to do this, it finds that the Plaintiff has not proven by a preponderance of the evidence that compelling her to repay her student loans would impose an undue hardship as the controlling case law requires: she has not satisfied either the first or second prongs of the Brunner test. The Court holds that Plaintiff's student loans must be declared non-dischargeable pursuant to § 523(a)(8).

This constitutes the Court's findings of fact and conclusions of law.

_____
June 5, 2007      Colleen A. Brown
Burlington, Vermont      United States Bankruptcy Judge

7